## 58602. MORRISON ASSURANCE COMPANY, INC. v. ARMSTRONG.

CARLEY, Judge.

Appellee Armstrong, an employee of Morrison, Inc., was injured and disabled during the course of her employment on December 21, 1976. These injuries were covered by workers' compensation insurance issued by appellant Morrison Assurance Company. Armstrong had also purchased a separate policy of group insurance issued to Morrison, Inc., the master policyholder, and its owned, affiliated or associated companies, which provided certain benefits for lost wages and medical expenses. Armstrong received a document evincing her coverage under the group policy, the cover of which stated: "Attached to and forming a part of Group Policy GAH-100 5212 Insured Ann Armstrong Effective 11-76. *The Company [appellant] and the Policyholder [Morrison, Inc.] hereby agree that the policy is amended as follows: . . .*" (Emphasis supplied.) Thereafter on the same page was a statement of amounts of benefits payable for "persons insured" and "dependents insured" in the event of specified occurrences referenced to sections of the policy. The second page contained definitions of "persons" and "dependents." Following this covering information was a "Certificate of Group Insurance . . . Policy No. GAH 100." Section XX of this certificate, which set forth "Limitations Applicable to Benefits," provided: "Benefits shall not be payable for . . .

(e) Occupational injury or disease incurred in the course of working for an employer *other than the Group Policyholder* [Morrison, Inc., Armstrong's employer], who is subject to the Workmen's Compensation law or who covers his employees under any other health insurance plan." (Emphasis supplied.)

Because her injury had not occurred while in the course of working for an employer *other than* the group policyholder, Armstrong submitted claims for expenses under the group policy in the belief that coverage was not excluded thereunder. The appellant-insurer, however, denied liability contending that the benefits sought were not available to her under the terms of the master policy issued January 1, 1974, a copy of which was not furnished to Armstrong. Section XX (e) of the master policy provides: "Benefits shall not be payable for:. . . Occupational injury or disease incurred in the course of working for *an employer,* who is subject to the Workmen's Compensation Law." (Emphasis supplied.) Moreover, Section XIV (b), which sets forth limitations applicable to weekly income for disability insurance, excludes coverage for "any disability due to sickness which is covered by a Workmen's Compensation Act or similar legislation, *or due to injury arising out of or in the course of any employment for wage or profit."* (Emphasis supplied.) Thus under the terms of the master policy benefits would not be payable for occupational injuries incurred while working for *any* employer, including the group policyholder, who was subject to the workers' compensation law.

Armstrong then brought suit seeking expenses, penalties and attorney fees. At the direction of the court both parties filed motions for summary judgment on the question of Armstrong's coverage under the group insurance policy. Summary judgment was granted to Armstrong and the insurer appeals, contending that Armstrong was barred from recovery and it was entitled to judgment because of the specific exclusion of benefits in the 1974 group policy, which controls over the terms of the certificate.

The law is very clear that "[a] contract of group insurance is made up of the master group policy and the certificate, which must be construed together. The

certificate holder is bound by the provisions of the group policy, the certificate being evidence of coverage thereunder." *Cherokee Credit Life Ins. Co. v. Baker*, 119 Ga. App. 579 (1b) (168 SE2d 171) (1969). See also *Lipshitz v. New Zealand Ins. Co.*, 34 Ga. App. 825 (131 SE 924) (1926); *Metropolitan Life Ins. Co. v. Fields*, 53 Ga. App. 76, 79 (184 SE 752) (1936); *Lancaster v. Travelers Ins. Co.*, 54 Ga. App. 718 (189 SE 79) (1936); *Cherokee Credit Life Ins. Co. v. Glisson*, 124 Ga. App. 527 (184 SE2d 479) (1971); *Barker v. Coastal States Life Ins. Co.*, 138 Ga. App. 164 (225 SE2d 924) (1976); *Ballinger v. C. & S. Bank*, 139 Ga. App. 686 (229 SE2d 498) (1976); *Rider v. Westinghouse Elec. Corp.*, 152 Ga. App. 805 (1) (1979).

The reasoning behind this is that the contracting parties in group insurance are primarily the employer and the insurer, and even though the group policy is in the custody of another, that fact is "well known" to the parties since the certificate contains a disclaimer that it is not the whole contract and it is within the power of the insured to compel production of the master policy. See, e.g., *Blaylock v. Prudential Ins. Co.*, 84 Ga. App. 641, 644 (67 SE2d 173) (1951); *Cherokee Credit Life Ins. Co. v. Baker*, 119 Ga. App. 579, 583, supra.

Appellee argued, and the trial court apparently agreed, that the situation in the instant case is distinguishable because the documents issued to her in 1976 declared that "attached to and forming a part of" the group policy was the insurer's and the master policyholder's agreement that the master policy, issued in 1974, was *amended.* Since her certificate was "attached to" this document, it is urged that the provisions of the certificate affording coverage would be controlling as an "amendment" to the master policy. Appellant asserts, however, that the intent of the documents delivered to Armstrong in 1976 was to amend only the amount of benefits payable which were listed on the cover page, not the entire policy, and that the certificate, though attached to the document amending the amount of benefits payable, was not an "amendment" of the policy itself. The certificate also plainly states the following disclaimer: "[I]n accordance with and *subject to* the terms and conditions of the below numbered Group Policy [Group

Policy No. GAH 100], issued and delivered to the Policyholder [Morrison, Inc.] named above, the Individual named is insured for the benefits described in the attached Certificate(s). *The Insurance is subject in every respect to the terms of the Policy, which alone constitutes the contract.*" (Emphasis supplied.)

Because of this disclaimer and the long line of decisions upholding provisions of the master policy over conflicting terms of the certificate upon which the group insured has relied, we must reverse, albeit reluctantly. Justice is not well served by this rule of law. To insist, after a person has paid to secure benefits from an insurance company, that the document upon which she relied, and the only one in her possession, was merely "an instrument which contained a reference to another instrument in which were embodied the limitations" of her actual coverage, as in *Cherokee Life,* 119 Ga. App. at 584, and its predecessors and progeny, in our view, is unreasonable. We find its application particularly harsh where, as here, the insurer and the master policyholder are component companies of the same corporate structure. This rule applicable to group policy situations is inconsistent with the established general principle that insurance contracts are always to be construed in favor of the insured and against the insurer, particularly where exclusions are in issue. See, e.g., *National Cas. Co. v. Tanner,* 100 Ga. App. 618 (112 SE2d 232) (1959); *Georgia Farm Bureau Mut. Ins. Co. v. Coleman,* 121 Ga. App. 510 (174 SE2d 351) (1970); *Broome v. Allstate Ins. Co.,* 144 Ga. App. 318 (241 SE2d 34) (1977). Certainly it violates the spirit of the trend toward consumer protection now recognized in all areas of the law. "The law must reflect changes in societal patterns and individual priorities." *Bradley v. Tenneco Oil Co.,* 146 Ga. App. 161, 165 (1) (245 SE2d 862) (1978). But here, as in *Bradley,* we conclude that this court is powerless to provide the remedy. However, "[i]f this is a harsh rule, and if it does not have the approval of the people of the State, there is a definite way, a plain way, and a legal way, whereby it may be changed . . . [A] very simple and brief enactment of the legislature . . . is all that is required . . ." *Roberts v. Barwick,* 187 Ga. 691, 694 (1 SE2d 713) (1939).

*Judgment reversed. Deen, C. J., and Shulman, J.,*

*concur.*

Submitted October 2, 1979 — Decided January 8, 1980.

*Andrew R. Greene,* for appellant.
*Richard R. Kirby,* for appellee.