**RHEIN BUILDING COMPANY and HGM Architecture, Inc., Plaintiffs,**

v.

**Herman GEHRT a/k/a Hy Gehrt, Quality Builders, Inc., Assurance Company of America, Shirley Bender–Gehrt, Hastings Mutual Insurance Company, Secura Insurance, A Mutual Company, Robert J. Acord d/b/a R.J. Acord and Tower Insurance Company, Inc., Defendants.**

No. 97–C–205.

United States District Court, E.D. Wisconsin.

Sept. 17, 1998.

---

898

Kent I. Carnell, Lisa Pierobon Mays, Lawton & Cates, Madison, WI, for Rhein Building Co., HGM Architecture, Inc.

Timothy F. Mentkowski, Raymond J. Pollen, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, David Winkle, Winkle Law Office, Neenah, WI, for Herman Gehrt.

Robert J. Lauer, Kasdorf, Lewis & Swietlik, Milwaukee, WI, Ronald G. Pezze, Jr., Peterson, Johnson & Murray, Milwaukee, WI, Charles D. Koehler, Herrling, Clark, Hartzheim & Siddall, Appleton, WI, for Shirley Bender–Gehrt.

Philip A. Munroe, DiRenzo & Bornier, Neenah, WI, Michael J. Pfau, Russell A. Klingaman, Hinshaw & Culbertson, Milwaukee, WI, for Robert J. Acord.

Timothy J. Mentkowski, Raymond J. Pollen, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for Hy Quality Builders Inc.

DeVonna Joy, James G. Allison, Whyte, Hirschboeck & Dudek, Milwaukee, WI, for Hastings Mutual Insurance Co.

James W. Mohr, Jr., Mohr & Anderson Hartford, WI, for Tower Insurance Co., Inc.

Joseph P. Wright, Stafford, Rosenbaum, Rieser & Hansen, Madison, WI, for Assurance Co. of America, Inc.

### DECISION AND ORDER

CURRAN, District Judge.

Rhein Building Company (RBC) and HGM Architecture, Inc. are suing Herman Gehrt, Hy Quality Builders, Inc., Shirley Bender–Gehrt, Robert Acord, and their insurers for copyright infringement[1] of architectural plans for an eight-family apartment building. *See* Title 17 of the United States Code. This court has federal question jurisdiction over this claim, *see* 28 U.S.C. § 1331, and supplemental jurisdiction over the state law insurance counterclaim and cross claims, *see* 28 U.S.C. § 1337. In addition, federal courts have original and exclusive jurisdiction over

---

1. Pursuant to a stipulation, the Plaintiffs dismissed their claims for unfair competition under the Lanham Act, 15 U.S.C. §§ 1051–1127, common-law unfair competition, and a violation of Section 100.20 of the Wisconsin Statutes (methods of competition and trade practices). *See* Stipulation of Partial Dismissal (filed June 18, 1998).

copyright actions pursuant to 28 U.S.C. § 1338(a). The Plaintiffs are seeking lost profits, actual money damages, statutory damages under the Copyright Act, 17 U.S.C. § 504, treble damages under the Lanham Act, punitive damages for common-law unfair competition, injunctive relief, costs, and attorney fees.

The Defendants have denied liability and have each moved for summary judgment. These motions are now fully briefed.

## I. FACTS

In 1993, Rhein Building Corporation contracted with HGM Architecture to design plans for apartment buildings to be erected in Omro, Wisconsin and surrounding communities. The contract, dated June 22, 1993, provided that the architect would retain ownership of the copyright in the drawings and specifications for the project. HGM drafted the plans with input from RBC and the first building was completed in October of 1994. A second building was completed in 1995. On May 3, 1996, a federal copyright registration was issued to RBC and HGM for architectural drawings labeled "Omro Multi Family Housing Rhein Building Company Project No. 2493.00 HGM." The copyright registration, as supplemented,[2] named HGM and RBC as the joint authors of the architectural drawings and it named HGM and RBC as the joint claimants or owners of the copyright.

The Plaintiffs allege that the Defendants constructed two apartment buildings in Winneconne, Wisconsin, which are strikingly similar to their Omro buildings. Hy Gehrt and Hy Quality Builders, Inc. were the builders; Gehrt's wife, Shirley Bender–Gehrt, was the owner and developer; and Robert Acord was the architect for this project. Acord completed the plans on November 3, 1995. Construction of the first "infringing" apartment building was completed in July of 1996. The second building was completed in June of 1997. The Gehrts advertised rental units in both buildings to the general public.

The Plaintiffs believe that they are losing business because of the alleged infringement, so they have commenced this lawsuit.

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment may be granted when the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(c). All facts and inferences must be viewed in the light most favorable to the nonmoving party. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir.1997). Summary judgment is appropriately entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See McKenzie v. Illinois Department of Transportation*, 92 F.3d 473, 479 (7th Cir.1996); *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir.1995).

## III. INSURANCE DEFENSE AND COVERAGE

Tower Insurance Company, Inc., which issued "Business Owners" liability policies to Robert J. Acord; Assurance Company of America (ACA), which issued a "Specialty Contractors" liability policy to Hy Quality Builders, Inc.; and Hastings Mutual Insurance Company, which issued "Business Owners" liability policies to Shirley Bender–Gehrt, a "Commercial Package" policy to Shirley Bender–Gehrt and Hy Quality Builders, and a "Commercial Umbrella" policy to Shirley Bender–Gehrt and Herman Gehrt, have moved the court for declarations that they have no duty to defend or to indemnify their insureds for the copyright claim at issue in this case. The movants have been defending their insureds under a reservation of rights.

---

**2.** A regulation implementing the Copyright Act provides that:

Supplementary registration is not appropriate: (A) as an amplification to reflect the ownership, division, allocation, licensing, or transfer of rights in a work, whether at the time basic registration was made or thereafter; or (B) to correct errors in statements or notices on the copies of phonorecords of a work, or to reflect changes in the content of a work;

37 C.F.R. § 201.5(b)(2)(iii).

■ The construction of an insurance policy is particularly amenable to summary judgment because it presents a question of law. *See Employers Insurance of Wausau v. Stopher,* 1998 WL 614644 *2 (7th Cir. September 15, 1998); *John Deere Insurance v. Shamrock Industries,* 929 F.2d 413, 417 (8th Cir.1991); *Raby v. Moe,* 153 Wis.2d 101, 109, 450 N.W.2d 452, 454·(1990). In this case, the law of the forum, Wisconsin, applies to the substantive insurance issues because the contracts were drafted and purchased in Wisconsin. *See Erie Insurance Group v. Sear Corporation,* 102 F.3d 889, 891 (7th Cir.1996).

Before proceeding, the court must note that the parties have not cited, and the court has not located, any Wisconsin case analyzing issues of insurance coverage for a copyright claim. This is not surprising, because the Copyright Act of 1976 (effective January 1, 1978), as amended to comply with international treaties, preempts all state and common-law copyright protection. *See* 17 U.S.C. § 301. Federal courts have exclusive jurisdiction over copyright claims, *see* 28 U.S.C. § 1338, so most insurance coverage questions are resolved in federal court. Federal cases addressing issues of insurance coverage for copyright infringement of architectural works are also scarce because statutory protection was conferred only recently. After the passage of the 1976 Act, courts extended federal copyright protection to architectural plans, but not to buildings constructed from those plans. *See, e.g., Robert R Jones Associates v. Nino Homes,* 858 F.2d 274, 280 (6th Cir.1988). In 1990, the Architectural Works Copyright Protection Act codified copyright protection for both architectural plans and completed buildings within its coverage for "architectural works." [3] *See* Pub.L. No. 101–650, Tit. VII, 104 Stat. 5133 (1990) (codified in scattered sections of 17 U.S.C).

**3.** The Copyright Act provides that:

> An·"architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.
>
> 17 U.S.C. § 101.

■ Ownership of a copyright confers a bundle of statutory rights upon the owner which are enumerated in 17 U.S.C. § 106. These intangible rights are not the same as those rights conferred upon the owner of a patent or trademark. Therefore, cases involving insurance coverage for other forms of intellectual property cannot automatically be applied to a copyright claim. It is instructive to note, however, that most courts have concluded that general liability insurance policies do not cover liability for patent infringement, *see, e.g., Heil Company v. Hartford Accident and Indemnity Company,* 937 F.Supp. 1355 (E.D.Wis.1996), misappropriation of trade secrets, *see, e.g., Winklevoss Consultants, Inc. v. Federal Insurance Company,* 991 F.Supp. 1024 (N.D.Ill.1998), trademark infringement, *see, e.g., Advance Watch Company, Limited v. Kemper National Insurance Company,* 99 F.3d 795 (6th Cir. 1996), antitrust, *see, e.g., Curtis–Universal v. Sheboygan E.M.S., Inc.,* 43 F.3d 1119 (7th Cir.1994), or other tort-type conduct that involves intentional acts.[4] In *Curtis–Universal,* Chief Judge Posner explained that:

> As far as we have been able to determine, insurance companies will not insure against liability for antitrust violations, a liability based on deliberate rather than inadvertent actions, *cf. Harley–Davidson, Inc. v. Minstar, Inc.,* 41 F.3d 341, 343 (7th Cir.1994), and for this and other reasons impossible to predict by the actuarial methods on which insurance companies base their determination of premiums.

*Curtis–Universal,* 43 F.3d at 1123. Guided by these general observations, the court will now examine each of the Defendant's insurance policies using Wisconsin contract principles.

**4.** *But see Sentex Systems, Inc. v. Hartford Accident & Indemnity Company,* 93 F.3d 578 (9th Cir.1996) (insurer's "advertising injury" provision potentially covered insured's liability for third-party's misappropriation of trade secrets claim); *Curtis–Universal, Incorporated v. Sheboygan Emergency Medical Services, Incorporated,* 43 F.3d 1119 (7th Cir.1994) (unfair competition was arguably within meaning of advertising injury coverage for purposes of determining duty to defend).

## A. WISCONSIN PRINCIPLES OF INSURANCE POLICY CONSTRUCTION

 Interpretation of insurance policies is governed by the same rules of construction that apply to other contracts. *See Sprangers v. Greatway Insurance Company*, 182 Wis.2d 521, 536, 514 N.W.2d 1, 6 (1994); *Smith v. Atlantic Mutual Insurance Company*, 155 Wis.2d 808, 810, 456 N.W.2d 597, 598 (1990). In Wisconsin, the interpretation of contracts of insurance is made with an aim toward effecting the true intent of the parties and the extent of policy coverage. *See Limpert v. Smith*, 56 Wis.2d 632, 640, 203 N.W.2d 29, 33 (1973). In construing an insurance policy, the clear and unambiguous language of the policy must be given the plain and ordinary meaning that would be understood by a reasonable person in the position of the insured. *See General Casualty Company of Wisconsin v. Hills*, 209 Wis.2d 167, 175, 561 N.W.2d 718, 722 (1997); *Gonzalez v. City of Franklin*, 137 Wis.2d 109, 122, 403 N.W.2d 747, 752 (1987); *Ehlers v. Colonial Penn Insurance Company*, 81 Wis.2d 64, 74–75, 259 N.W.2d 718, 723–24 (1977).

 When a policy is clear and unambiguous on its face, the terms of that policy should not be rewritten by construction to bind an insurer to a risk it never contemplated or was willing to cover, and for which it was never paid. *See City of Edgerton v. General Casualty Company of Wisconsin*, 184 Wis.2d 750, 780–81, 517 N.W.2d 463, 476–77 (1994), *cert. denied*, 514 U.S. 1017, 115 S.Ct. 1360, 131 L.Ed.2d 217 (1995) and 515 U.S. 1161, 115 S.Ct. 2615, 132 L.Ed.2d 858 (1995); *Limpert*, 56 Wis.2d at 640, 203 N.W.2d at 33. But, when the policy language is ambiguous, coverage is to be resolved in favor of the insured. *See Smith v. Atlantic Mutual Insurance Company*, 155 Wis.2d 808, 811, 456 N.W.2d 597, 598 (1990). Whether a contract is ambiguous is a question of law. *See Golden Valley Supply v. American Insurance Company*, 195 Wis.2d 866, 878, 537 N.W.2d 58, 62 (Wis.Ct.App. 1995). Words or phrases in a contract are ambiguous when they are "reasonably or

fairly susceptible to more than one construction." *Stanhope v. Brown County*, 90 Wis.2d 823, 849, 280 N.W.2d 711, 722 (1979). *See also Maryland Casualty Company v. Ben–Hur*, 203 Wis.2d 411, 418, 553 N.W.2d 535, 537 (Wis.Ct.App.1996). Similarly, policy exclusions are to be narrowly construed against the insured. *See Smith*, 155 Wis.2d at 811, 456 N.W.2d at 598.

 At this stage of this litigation [5] the issue is whether Tower, ACA and Hastings must defend their insureds. The duty to defend is broader than the duty to indemnify, because the duty to defend is triggered by arguable, as opposed to actual, coverage. *See Newhouse v. Citizens Security Mutual Insurance Company*, 176 Wis.2d 824, 834–35, 501 N.W.2d 1, 5 (1993).

 An insurer's duty to defend its insured in a third-party suit is predicated on whether the suit presents facts that might fall within the coverage of the policy. *See Atlantic Mutual Insurance v. Badger Medical Supply*, 191 Wis.2d 229, 236, 528 N.W.2d 486, 489 (Wis.Ct.App.1995). "What is important is not the legal label the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct, as alleged in the complaint, is at least arguably within one or more of the categories of wrongdoing that the policy covers." *Curtis–Universal v. Sheboygan E.M.S., Inc.*, 43 F.3d 1119, 1122 (7th Cir.1994). The existence of the duty to defend depends solely upon the nature of the claim being asserted against the insured and has nothing to do with the merits of the claim. *See Radke v. Fireman's Fund Insurance Company*, 217 Wis.2d 39, 43, 577 N.W.2d 366, 369 (Wis.Ct.App.1998). If there is any doubt regarding the duty to defend, it must be resolved in favor of the insured. *See General Casualty Company of Wisconsin v. Hills*, 209 Wis.2d 167, 176, 561 N.W.2d 718, 722 (1997). When the Complaint alleges facts that are partially within and partially without the scope of coverage, the insurer is obligated to defend the entire suit. *See Curtis–Universal, Incorporated v.*

---

**5.** Although the insurance companies have challenged both their duties to defend and their duties to indemnify, the court need only consider their duties to defend because the issue of whether they have the duties to indemnify is not ripe unless and until their insureds are found liable. Moreover, if there is no duty to defend, there is no duty to indemnify.

*Sheboygan Emergency Medical Services, Incorporated,* 43 F.3d 1119, 1122 (7th Cir.1994). In order to decide whether an insurer has a duty to defend, the court must compare the third-party claim to the insurance policies at issue and determine whether, if the allegations are proven, the insurers would be required to pay the resulting judgment. *See United States v. Security Management Company Incorporated,* 96 F.3d 260, 263 (7th Cir.1996); *General Casualty Company of Wisconsin,* 209 Wis.2d at 176–77, 561 N.W.2d at 722–23.

▪ In a Wisconsin insurance policy dispute, the insured has the burden of proving that coverage applies, and the insurer, if relying on an exclusion to deny coverage, has the burden of demonstrating that the exclusion is applicable. *See Just v. Land Reclamation, Ltd.,* 151 Wis.2d 593, 605, 445 N.W.2d 683, 688 (Wis.Ct.App.1989), *rev'd on other grounds,* 155 Wis.2d 737, 456 N.W.2d 570 (1990).

### B. TOWER INSURANCE

Defendant Tower Insurance was the first of the insurers to move for summary judgment in this case. Tower issued a series of "Business Owners" liability policies to Defendant Robert Acord, the architect who designed the two allegedly infringing apartment buildings. Tower insists that it does not have a duty to defend under any provision of the policies, but Acord[6] maintains that the property damage coverage should apply. "Property damage" is explained in the policy as follows:

**SECTION II—GENERAL LIABILITY**

A. COVERAGES

**1. Coverage J—Business Liability**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" … to which this insurance applies.

….

**SECTION IV—DEFINITIONS**

….

17. "Property Damage" means:

….

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*See* Affidavit of Jeffrey Szalacinski (certified copy of Tower Insurance Policy for 10/13/93–10/13/94); Affidavit of Jeffrey Szalacinski (certified copy of Tower Insurance Policy for 10/13/94–10/13/95); Affidavit of Jeffrey Szalacinski (certified copy of Tower Insurance Policy for 10/13/95–10/13/96); Affidavit of Jeffrey Szalacinski (certified copy of Tower Insurance Policy for 10/13/96–10/13/97). Acord contends that the Plaintiffs are claiming loss of use of their building plans; that the plans are tangible property that have not been physically injured; and that, therefore, the claimed copyright infringement is a covered occurrence.

▪ This strained theory is without merit. The rights conferred by copyright are intangible, intellectual property, not tangible property. *See* 17 U.S.C. § 106. *See also Robert Bowden, Inc. v. Aetna Casualty and Surety Company,* 977 F.Supp. 1475, 1478–79 (N.D.Ga.1997). The Plaintiffs' infringement claim is governed by the federal Copyright Act, which provides in section 202 that:

Ownership of a copyright, or of any of the exclusive rights under a copyright is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object.

17 U.S.C. § 202. Thus, a copyright is independent of its physical manifestation. *See United States v. Smith,* 686 F.2d 234, 239 (5th Cir.1982). The ownership of a copyright or rights thereunder are distinct from ownership of the material object in which the copyrighted work is embodied. *See Design Options, Inc. v. BellePointe, Inc.,* 940 F.Supp.

---

**6.** The Plaintiffs have joined Acord in arguing that Tower has a duty to defend and indemnify.

86, 91 (S.D.N.Y.1996); *Forward v. Thorogood*, 758 F.Supp. 782, 784 (D.Mass.1991), *aff'd*, 985 F.2d 604 (1st Cir.1993); *Wildlife Internationale, Inc. v. Clements*, 591 F.Supp. 1542, 1546 n. 12 (S.D.Ohio 1984).

RBC and HGM are claiming that Acord infringed their rights under the Copyright Act, not any rights they might have to the physical plans. The Copyright Act specifically provides that it does not confer rights in the material embodiment of the copyrighted work. And, whereas the owner of a patent obtains "the right to exclude others from ... using ... the invention," the rights granted to a copyright owner under Section 106 of the Copyright Act do not include the right to prevent others from using the copyrighted work. *See* 35 U.S.C. § 154. One treatise writer explains that: "ordinarily a copyrighted work may be 'used' by the interested public without violating those rights that are granted to a copyright owner. Thus, the fundamental rights to prevent reproduction, distribution, publicly performing, and display do not prevent the reading of a book, the viewing of a play, or listening to a sound recording." 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 2.18[A]. Therefore, under the Copyright Act, a copyright claim does not involve "loss of use of tangible property that is not physically injured."[7] In any case, the factual record does not support Acord's contention that the Plaintiffs have lost the use of their physical plans. The Plaintiffs do not allege the type of injury covered by the property damage definition in the Tower Insurance policy issued to Acord, so Tower has no duty to defend under that provision.[8]

---

[7.] In *State Farm Fire and Casualty Insurance Company v. White*, 777 F.Supp. 952 (N.D.Ga. 1991), the court found the physical embodiment of the architectural plans to be covered as tangible property (but, only for the value of the paper) when construing a similar insurance policy provision for "loss of use of tangible property," but only because the third party claimed theft of the physical plans by the insureds. *Id.* at 953–56. The insureds in *State Farm* agreed that the policy did not extend to claims for copyright infringement.

[8.] In addition to joining Acord's arguments, the Plaintiffs maintain that coverage is available under the Tower policy's "Products—Completed

Acord also believes that Tower should defend him based upon the policy's "advertising injury" provision which reads:

**A. COVERAGES**

 1. Coverage J—Business Liability

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies.

 \*\*\*

 b. This insurance applies:

 (2) To:

 (a) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

 (b) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

 but only if the offense was committed in the "coverage territory" during the policy period.

 \*\*\*

*See* Affidavit of Jeffrey Szalacinski (certified copy of Tower Insurance Policy for 10/13/93–10/13/94); Affidavit of Jeffrey Szalacinski (certified copy of Tower Insurance Policy for 10/13/94–10/13/95); Affidavit of Jeffrey Szalacinski (certified copy of Tower Insurance Policy for 10/13/95–10/13/96); Affidavit of Jeffrey Szalacinski (certified copy of Tower Insurance Policy for 10/13/96–10/13/97).

---

Operations Hazard" language which reads as follows:

Products—Completed Operations Hazard includes all "bodily injury" and "property damage" arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

As Tower points out, this language is found on the declarations page. It is not an insuring provision. Moreover, the Plaintiffs have failed to explain how it relates to the copyright claim. Therefore, no coverage is available under this language.

Acord concedes that he did not engage in advertising his plans or the allegedly infringing apartment buildings, but he recognizes that he could be held jointly and severally liable for contributory infringement, including advertising, on the part of the other Defendants. This theory raises an interesting issue regarding insurance coverage for joint and several liability under copyright law, however, it need not be explored, because as explained in Subsection C, *infra*, advertising injury coverage does not trigger the duty to defend under the particular facts of this case.

Finally, Tower points out that its "Exclusion J—Business Liability Exclusions," excuses any duty to defend in this case:

## B. EXCLUSIONS

1. Coverage J—Business Liability Exclusions

This insurance does not apply to:

\*\*\*

J. "Bodily injury", "property damage", "Personal injury" or "advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:

(2) Preparing, approving or failing to approve or prepare maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

*See* Affidavit of Jeffrey Szalacinski (certified copy of Tower Insurance Policy for 10/13/93–10/13/94); Affidavit of Jeffrey Szalacinski (certified copy of Tower Insurance Policy for 10/13/94–10/13/95); Affidavit of Jeffrey Szalacinski (certified copy of Tower Insurance Policy for 10/13/95–10/13/96); Affidavit of Jeffrey Szalacinski (certified copy of Tower Insurance Policy for 10/13/96–10/13/97).

Acord contends that this exclusion applies only to an architect's professional malpractice or negligence, not to an intentional act like copyright infringement. However, because the alleged infringement involved preparing drawings and the policy language does not limit the exclusion to negligent acts,

it appears that this exclusion also negates Tower's duty to defend.

In sum, none of the Plaintiffs' allegations trigger Tower's duty to defend Acord against the copyright infringement claim. Therefore, summary judgment will be granted in favor of Tower Insurance Company, Inc. *See* Federal Rule of Civil Procedure 56.

## C. ASSURANCE COMPANY OF AMERICA

Defendant Assurance Company of America issued a "Specialty Contractors" liability policy to Hy Quality Builders, Inc. For many of the same reasons advanced successfully by Tower Insurance, ACA does not believe that it has a duty to defend or indemnify its insured under any provision of its policy. Hy Quality Builders, on the other hand, believes that it has coverage for the Plaintiffs' claim under ACA policy provisions for advertising injury, property damage, and products completed operation hazard.[9] Hy Quality also argues that Shirley Bender–Gehrt acts as an employee of the corporation and, that she should be covered under its policy.[10]

Like the Tower policy, the ACA policy issued to Hy Quality Builders contains the following coverage for "advertising injury":

## COVERAGE B. PERSONAL AND ADVERTISING LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or "offense" and settle any claim or "suit" that may result. . . .

b. This insurance applies to: . . . .

(2) "Advertising injury" caused by an offense committed in the course of

---

9. The Plaintiffs join Hy Quality Builders in arguing that ACA has a duty to defend and indemnify.

10. Under the ACA policy, executive officers, directors and employees of the corporation and architects, among others, are insured individuals

under defined circumstances. Thus, coverage could conceivably be extended to Herman Gehrt, Shirley–Bender Gehrt, and Robert Acord if they fit the policy definitions. *See* Affidavit of Joseph P. Wright at Exhibit A (Assurance Company of America Specialty Contractors Policy at 8).

advertising your goods, products or services; but only if the offense was committed in the "coverage territory" during the policy period.

. . . .

## SECTION V—DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:. . . .

. . . .

 c. Misappropriation of advertising ideas or style of doing business; or

 d. Infringement of copyright, title, or slogan.

Affidavit of Joseph P. Wright at Exhibit A (Assurance Company of America Speciality Contractors Policy at 5 & 12).

Herman Gehrt and Shirley Bender–Gehrt testified that they both erected signs advertising Shirley's apartment buildings and that she advertised her properties in newspapers and brochures. The Gehrts believe that, because they advertised the rental units to the general public, they should be defended under ACA's advertising injury coverage.

As a threshold matter, ACA argues that, under Wisconsin law, the duty to defend is determined solely by the allegations of the complaint. Because the RBS–HGM Amended Complaint contains no mention and raises no inference of advertising, ACA believes that it has no duty to defend.

█ It is true that, in Wisconsin courts, the duty to defend is determined solely by liberally construing the allegations within the four corners of the complaint and assuming all reasonable inferences. *See Doyle v. Engelke*, 219 Wis.2d 277, 283, 580 N.W.2d 245, 248 (1998); *City of Edgerton v. General Casualty Company*, 184 Wis.2d 750, 764–65, 517 N.W.2d 463, 470 (1994), *cert. denied*, 514 U.S. 1017, 115 S.Ct. 1360, 131 L.Ed.2d 217 (1995)

and 515 U.S. 1161, 115 S.Ct. 2615, 132 L.Ed.2d 858 (1995); *Newhouse v. Citizens Security Mutual Insurance Company*, 176 Wis.2d 824, 835, 501 N.W.2d 1, 5 (1993). However, one panel of the Court of Appeals for the Seventh Circuit saw the issue of whether an insurer's duty to defend should be derived solely from the complaint as a procedural issue governed by federal law, not the law of Wisconsin. In ruling on a Wisconsin insurance case, Chief Judge Posner, writing for the panel, stated that: "In a system of notice pleading, an insurer may be called on to defend without a complete articulation of the clam against its policyholders. . . . Wisconsin may, if it wishes, require elaborate pleading of fact and law; . . . the Federal Rules of Civil Procedure do not require the pleader to spell out its claim." *Allison v. Ticor Title Insurance Company*, 907 F.2d 645, 649 (7th Cir.1990). *But see United States v. Security Management Company, Inc.*, 96 F.3d 260, 263 (7th Cir.1996).

█ In this case the advertising injury coverage in the ACA policy does not apply to the copyright infringement alleged in the Amended Complaint, even if the Gehrts' evidence of advertising is taken into consideration. While it has long been established that persons who advertise an infringing work can be held liable as contributory infringers, *see, e.g., Screen Gems–Columbia Music, Inc. v. Mark–Fi Records, Inc.*, 256 F.Supp. 399 (S.D.N.Y.1966), the Defendants in this case allegedly infringed upon the Plaintiffs' architectural drawings and there is not one scintilla of evidence in the record that the Defendants advertised their infringing drawings to the public. While the advertising of the Gehrt apartment buildings might have some relevance to the amount of damages recoverable in this case, it did not materially contribute to the infringement of the plans.[11] Therefore, the court concludes

---

11. In many of the cases addressing insurance coverage for copyright infringement under an "advertising injury" provision, the courts did not find a duty to defend or indemnify because, as here, there was no causal nexus between the insured's advertising activities and the injury alleged. *See, e.g., Simply Fresh Fruit, Inc. v. Continental Insurance Company*, 94 F.3d 1219, 1223 (9th Cir.) (misappropriation of trade secrets and patent claims outside scope of advertising injury coverage because "advertising activities must

cause the injury—not merely expose it"), *cert. denied*, —— U.S. ——, 117 S.Ct. 388, 136 L.Ed.2d 304 (1996). *See also generally Novell, Inc. v. Federal Insurance Company*, 141 F.3d 983 (10th Cir.1998); *Sentry Insurance v. R.J. Weber Company, Inc.*, 2 F.3d 554 (5th Cir.1993); *Robert Bowden, Inc. v. Aetna Casualty and Surety Company*, 977 F.Supp. 1475 (N.D.Ga.1997); *GAF Sales & Service, Inc. v. Hastings Mutual Insurance Company*, 224 Mich.App. 259, 568 N.W.2d 165 (1997).

that ACA does not have a duty to defend Hy Quality Builders or any of the other Defendants because its advertising injury provision does not arguably provide coverage for the infringement of the architectural drawings alleged by the Plaintiffs in this situation.

The Defendants opposing ACA's motion, also argue that ACA has a duty to defend because the Plaintiffs' injuries are covered under the "property damage" and "products—completed operations hazard" provisions of the policy. These coverage clauses state that:

> Coverage A. Bodily Injury And Property Damage Liability
>
> > We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" . . . to which this insurance applies.
> >
> > \*\*\*
>
> 17. "Property damage" means:
>
> > \*\*\*
> >
> > b. Loss of use of tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
> >
> > \*\*\*

SECTION V—DEFINITIONS

> \*\*\*
>
> 16.a "Products—completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> > (1) Products that are still in your physical possession; or
> >
> > (2) Work that has not yet been completed or abandoned.

Affidavit of Joseph P. Wright at Exhibit A (Assurance Company of America Specialty Contractors Policy at 2, 14 & 15). These provisions are substantially similar to the property damage and products—completed operations hazard clauses in the Tower policy; so, for the reasons explained in Part III(B), above, the court concludes that they do not trigger ACA's duty to defend. Therefore, because ACA has no duty to defend its insured under any provision of its policy, the court will grant summary judgment in favor of ACA on its counterclaim and on the Plaintiffs' claim.[12]

### D. HASTINGS MUTUAL INSURANCE COMPANY

Defendant Hastings Mutual Insurance Company issued two "Business Owners" liability insurance policies to Shirley Bender–Gehrt, one "Commercial Package" policy to Shirley Bender–Gehrt and Hy Quality Builders, and one "Commercial Umbrella" policy to Shirley and Herman Gehrt.[13] Hastings argues that it does not have a duty to defend or indemnify under any provision of its policies, while the Gehrts, joined by the Plaintiffs, maintain that they have coverage under the provisions for property damage and for advertising injury. The language of both these coverages in the Hastings policies is identical to the language in the Tower and ACA policies. As discussed above, these provisions do not arguably cover the copyright infringement claim the Plaintiffs are alleging; therefore, Hastings is not obligated to defend or indemnify.

In addition, Hastings points out that the alleged copying of the RBC–HGM plans by Acord took place on and before November 3, 1995. The Hastings policies all have effective dates in 1996, so the only copying for which the Gehrts could be held liable occurred outside the policy period, and, thus, would not be covered under any interpretation of the property loss or advertising injury clauses. The Gehrts say that the advertising

---

**12.** Because the court has concluded that ACA has no duty to defend, it need not consider whether Shirley–Bender Gehrt is an employee of Hy Quality Builders and thereby covered by the ACA policy or whether Herman Gehrt or Robert Acord are covered by the policy.

**13.** Policy numbers and inception dates for the Hastings policies are:

a. Hastings Policy No. BO 907–53–93 (October 15, 1996) (Business Owners policy);

b. Hastings Policy No. BO 906–58–26 (August 25, 1996) (Business Owners policy);

c. Hastings Policy No. CPP 967–99–56 (October 29, 1996) (Commercial Package policy);

d. Hastings Policy No. ULC 906–58–26 (November 4, 1996) (Commercial Umbrella policy).

*See* Affidavit of De Vonna Joy Supporting Hastings Mutual Insurance Company's Motion for Summary Judgment at Exhibits E, F, G & H (copies of policies listed above).

of their second Winneconne apartment building occurred within the policy period and, thus, should be covered under the advertising injury provision. However, once again, they have failed to appreciate the fact that the copyright at issue is only for the architectural drawings. Although Herman Gehrt claims that he put out yard signs advertising both apartment buildings and Shirley Bender–Gehrt claims to have advertised through newspapers and brochures, neither one of them advertised the architectural drawings as opposed to the apartment buildings. For these reasons, the court will grant summary judgment in favor of Hastings Mutual Insurance Company.

## IV. *COPYRIGHT INFRINGEMENT*

Defendants Herman Gehrt, Hy Quality Builders, Shirley Bender–Gehrt and her insurer, Secura Insurance, and Robert J. Acord have each moved for summary judgment on the merits of the Plaintiffs' copyright infringement claim. The movants raise seven grounds upon which they believe they are entitled to judgment. They argue that:

(1) Rhein Building Company does not have standing to sue because it was not a joint author of the "architectural work";

(2) the design of the eight-family apartment building is not copyrightable;

(3) the buildings at issue are not substantially similar;

(4) the Defendants' plans were independently created;

(5) the Lanham Act does not apply to this case;

(6) HGM's state law claims are based upon copyright infringement and therefore are preempted;

(7) partial summary judgment should be granted on the damage issue because the law does not permit HGM to recover most of the damages alleged.

Addressing these issues in numerical order, the court concludes that the movants have not met their burden of showing that they are entitled to summary judgment on the liability claim. The Plaintiffs have made a showing minimally sufficient to raise a jury issue on ground one (1)—whether RBC and HGM were joint authors of the architectural drawings. Even though they have the burden of proving their affirmative defenses, the Defendants did not submit copies of their plans or of the Plaintiffs' plans,[14] so the record was insufficient for the court to make any ruling on grounds two (2) (copyrightability of the plans) or three (3) (substantial similarity of the buildings).[15] In ground three (3), the Defendants maintain that the Omro and Winneconne buildings are not substantially similar. However, the similarity of the buildings is not at issue. The copyright which provides the basis for jurisdiction over this action is a copyright for architectural drawings, not for a completed building.[16]

---

14. Copies of the parties' plans were filed by the Plaintiffs three weeks after the summary judgment motions were fully briefed. Because they were not referenced as exhibits in the papers of any party, they were not considered by the court. The court is not required to scour untimely submissions unaided in order to resolve summary judgment issues.

Although the Plaintiffs' plans were entered into the public record, the court notes that no notice of copyright registration is affixed.

15. Because only the architectural drawings are at issue, the court sees no reason to grant Defendant Shirley Bender–Gehrt's request for a view of the apartment buildings by the finder of fact which will now be the jury.

16. On the initial certificate of registration filed solely by HGM as author and claimant, the "nature of the work" was described as "Sheets 1 through 10 dated 10/12/93: Architectural Draw-

ings." On the "corrected" registration the "nature of the work" is described as "architectural building design and planning—sheets 1 though 10 dated 10/12/93." No source is noted for this change, although the form notes that HGM's architect James Groff added "Constructed 6/24/94" to the original title "Omro Multi Family Housing Rhein Building Company Project No. 2493.00 HGM." Attorney Lisa Mays, who represents the Plaintiffs in this action, is noted as the source who asked that the name of Rhein Building Company be added as an author and as a claimant. *See* Affidavit of James Groff at Exhibits A, B & C (certificates of copyright registration).

This "correction" of the description of the work gives rise to an inference that the Plaintiffs were attempting to obfuscate the subject matter of their copyright to suggest that it might cover the completed building. The corrections support the Defendants' concerns about the validity of the copyright.

*See* Affidavit of James Groff at Exhibits A, B, C (certificates of copyright registration). The directions for copyright application make clear that these two vehicles of expression—plans and buildings—must have separate copyrights. *See Id.* at ¶ 13, Exhibit M. *See also* 37 C.F.R. § 202.11(c)(4).[17] Thus, to prevail on summary judgment, the Defendants would have to establish that their plans are not similar to the Plaintiffs' plans.

A more fully developed factual record is also required to resolve the issue presented by ground four (4)—whether the Defendants' plans were independently created. Assessing this ground requires judgments of credibility which cannot be made on summary judgment.

Because the Plaintiffs have dismissed all claims but copyright infringement, grounds five (5) (Lanham Act claim) and six (6) (state law claims) need not be considered.

■ Finally, in ground seven (7) the Defendants challenge the actual damages and statutory damages the Plaintiffs are seeking. The Plaintiffs have not yet made the requisite election to seek either actual damages or statutory damages. *See* 17 U.S.C. § 504(c)(1). However, the undisputed facts in the record show that they are not entitled to an award of statutory damages or attorney fees. Section 412 of the Copyright Act provides that:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a) or an action instituted under section 411(b), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration is made within three months after the first publication of the work.

17 U.S.C. § 412.

The Plaintiffs say that their plans were never "published." [18] *See* Plaintiffs' Brief in Opposition to the Defendants Hy Quality Builders and Herman Gehrt's Motion for Summary Judgment at 3. Therefore, subsection (1) of section 412 applies. Acord says that his plans were completed on November 3, 1995, yet the Plaintiffs did not obtain their copyright registration until May 3, 1996. Therefore, the alleged copying occurred before the effective date of the registration which renders the Plaintiffs ineligible to seek statutory damages or attorney fees. *See* 17 U.S.C. § 412(1). Contrary to the Plaintiffs' position, the dates the Gehrt–Acord buildings were completed is irrelevant. *See Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 144 (5th Cir.1992) (a plaintiff may not recover an award of statutory damages and attorney fees for infringements that commenced after registration if the same defendant commenced an infringement of the same work prior to registration). *See also Qualey v. Caring Center of Slidell*, 942 F.Supp. 1074, 1076 (E.D.La.1996). The copying of the Plaintiffs' architectural drawings is the act of infringement at issue here, not the building of the apartments. *See, e.g., Johnson v. Jones*, 149 F.3d 494 (6th Cir.1998).

Finally, the court will also dismiss the Plaintiffs' claims for punitive damages sought for common-law unfair competition and for treble damages sought under the Lanham Act, *see* 15 U.S.C. § 1117. The common-law and Lanham Act unfair competition claims have been dismissed and the Copyright Act

---

**17.** A regulation implementing the Copyright Act provides that:

> Where dual copyright claims exist in technical drawings and the architectural work depicted in the drawings, any claims with respect to the technical drawings and architectural work must be registered separately.

37 C.F.R. § 202.11(c)(4).

**18.** A regulation implementing the Copyright Act provides that:

> Publication of an architectural work occurs when underlying plans or drawings of the building or other copies of the building design are distributed or made available to the general public by sale or other transfer of ownership, or by rental, lease, or lending. Construction of a building does not itself constitute publication for purposes of registration unless multiple copies are constructed.

37 C.F.R. § 202.11(c)(5).

does not provide for these forms of relief. *See* 17 U.S.C. § 504.

The Defendants have not met their burden of showing that they are entitled to summary judgment on the ultimate issue of liability. Therefore, a determination of whether RBC was a joint author of the architectural plans; whether the architectural plans exhibit the minimal degree of originality required for copyright protection; whether the Plaintiffs' and Defendants' plans are substantially similar; and whether the Defendants' architectural drawings were independently created will have to await trial. The Defendants have met their burden of showing that the Plaintiffs are not entitled to statutory damages, attorney fees, punitive damages, and treble damages as a matter of law, so these claims will be dismissed.

Because Robert Acord's summary judgment motion is being denied, his motion for full costs and attorney fees will also be denied.

### ORDER

For the reasons explained above, the court ORDERS that the "Motion for Summary Judgment on Behalf of Defendant Tower Insurance Company" (filed January 12, 1998) IS GRANTED. When the court enters final judgment, it will enter a judgment declaring that Defendant Tower Insurance Company has no duty to defend or indemnity Robert J. Acord, d/b/a R.J. Acord, Architect, against the Plaintiffs' copyright claim.

IT IS FURTHER ORDERED that "Defendant Assurance Company of America's Motion for Summary Judgment" (filed February 11, 1998) IS GRANTED. Summary judgment is granted in favor of ACA on its counterclaim and on the Plaintiffs' claim. When the court enters final judgment, it will enter a judgment declaring that Defendant Assurance Company of America has no duty to defend or indemnify Hy Quality Builders, Inc. against the Plaintiffs' copyright claim.

IT IS FURTHER ORDERED that "Hastings Mutual Insurance Company's Motion for Summary Judgment" (filed April 7, 1998) IS GRANTED. When the court enters a final judgment, it will enter a judgment declaring that Defendant Hastings Mutual Insurance Company has no duty to defend or indemnify Herman Gehrt, Hy Quality Builders, Inc., or Shirley Bender–Gehrt against the Plaintiffs' copyright claim.

IT IS FURTHER ORDERED that Defendants Hy Quality Builders, Inc's and Herman Gehrt's "Motions for Summary Judgment" (filed May 15, 1998) ARE GRANTED IN PART AND DENIED IN PART. The motions are granted in that the Plaintiffs' claims for statutory damages, attorney fees, punitive damages and treble damages are dismissed. The motions are denied as to all other issues raised.

IT IS FURTHER ORDERED that "Defendants Shirley Bender–Gehrt and Secura Insurance Company's Motions for Summary Judgment" (filed May 15, 1989) ARE GRANTED IN PART AND DENIED IN PART. The motions are granted in that the Plaintiffs' claims for statutory damages, attorney fees, punitive damages and treble damages are dismissed. The motions are denied as to all other issues raised.

IT IS FURTHER ORDERED that "Defendant Robert J. Acord's Motions for: (1) Summary Judgment and (2) Full Costs and Attorney's Fees Pursuant to 17 U.S.C. § 505" (filed May 15, 1998) ARE GRANTED IN PART AND DENIED IN PART. The motions are granted in that the Plaintiffs' claims for statutory damages, attorney fees, punitive damages and treble damages are dismissed. The motions are denied as to all other issues raised.